IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**HUMAN RIGHTS DEFENSE CENTER**                                              **PLAINTIFF**

v.                              **CASE NO. 3:17-CV-3070**

**BAXTER COUNTY, ARKANSAS**                                              **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiff Human Rights Defense Center's ("HRDC") Motion for Attorneys' Fees, Costs, and Expenses (Doc. 117). The Court has also received Defendant Baxter County's Response in Opposition (Doc. 119), HRDC's Reply (Doc. 123), and the County's Sur-Reply (Doc. 126).[1] For the reasons that follow, the Court will **DENY** HRDC's motion for attorney's fees and order that each party bear its own costs.

### I. BACKGROUND

After discovery closed in this case, both parties moved for summary judgment with respect to HRDC's First and Fourteenth Amendment claims. In resolving these cross-motions, the Court held that the First Amendment claim would go to trial. On HRDC's Fourteenth Amendment procedural due process claim, however, the Court split the 110 rejected HRDC mailings into three separate categories. The first category, and the only category on which HRDC prevailed, consisted of the four identified violations from HRDC's August 5, 2016 mailings, when the County rejected the mail without providing

---

[1] Before the filing of this motion, HRDC had also filed a Motion to Stay (Doc. 112). After considering extant Eighth Circuit law, which favors prompt resolution of attorney's fees requests so that any subsequent appeal on that issue can be considered simultaneously with the final judgment on the merits, the Court later denied HRDC's motion. See Doc. 116.

1

any reason for its rejection. The second category was reserved for mailings sent on January 6, January 12, May 12, and May 18 of 2017. For all of these mailings, HRDC was clearly put on notice as to the reason why the mailings were not being distributed to the inmates at the Jail. Finally, there was a third category consisting of mailings sent between September 2016 and January 2017. There was no evidence in the record whether the County provided a notification on these mailings as to why they were being rejected. Subsequent to that ruling, HRDC withdrew its procedural due process claims with respect to that category of mailings. So, to repeat, out of 110 separate mailings, the Court found that there were only four technical violations of HRDC's procedural due process rights.

The remaining First Amendment claim and the issue of whether HRDC was entitled to damages for these aforementioned technical due process violations then proceeded to a three-day bench trial. Following a round of post-trial briefing, the Court issued its Memorandum Opinion and Order resolving these issues on April 25, 2019. In that order, the Court found in favor of the County on the First Amendment claim and additionally found that HRDC had not suffered any actual injuries from the earlier-identified due process violations. Because only an award of nominal damages was appropriate, the Court issued a Judgment that same day in the amount of $4 ($1 for each of the four discrete violations). The remaining claims were all dismissed with prejudice. (Doc. 105).

Almost a full twenty-eight days later, HRDC filed what it termed a Motion to Amend/Correct Judgment (Doc. 106). It seems that, at some point during this intervening month, HRDC had discovered what it admitted was a simple clerical/scrivener's error: the Court, in its memorandum opinion and order and in the resulting judgment, had inserted

an incorrect division number. The original documents bore the division number 5 (representing the Fayetteville division); the division number should have been 3, because this was a Harrison Division case. Apparently, this error had been repeated from earlier opinions in this case, and the error had not been previously identified by either the Court or any of the parties. Nevertheless, HRDC sought correction of this error. Because this was really much ado about nothing,[2] the Court simply corrected the division numbers on its orders, making no other changes. (Doc. 108). The following day, HRDC filed its Notice of Appeal (Doc. 109). Following the Court's order denying the motion to stay, HRDC filed the instant motion, requesting $145,235 in attorney's fees and $11,598.82 in costs and expenses.

## II. LEGAL STANDARD

Pursuant to 42 U.S.C. § 1988, in a § 1983 action, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Although the statutory language is written permissively, the Supreme Court has clarified that, in the absence of special circumstances, "a district court not merely 'may' but *must* award fees to the prevailing plaintiff." *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 760-61 (1989). Thus, unless "special circumstances would render such an award unjust," *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400,

---

[2] HRDC attempts to justify the importance of this motion by intimating that it could not locate the case on PACER when it entered the full number (with the incorrect division number). However, as the County's subsequent filings indicate, any search using simply the actual case number (17-3070) or the names of the parties would have enabled it to locate the case in an expeditious fashion. As the Court will find below, this motion was a clear attempt to resurrect an otherwise untimely fee petition request and highlights HRDC's lack of diligence in seeking fees and costs following issuance of the Judgment, which in substance has never changed since it was issued on April 25.

3

402 (1968), fees should be awarded. The reason, of course, is to fulfill the purposes behind § 1988 by ensuring "'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). By providing a mechanism by which attorneys who take on civil rights claims can recover their fees should they prevail, Congress has incentivized the bar to take these cases in the first place. Nevertheless, although § 1988 presumptively entitles a prevailing party to a fee award, fee-shifting statutes like it "were not designed as a form of economic relief to improve the financial lot of attorneys," *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), and should "not produce windfalls to attorneys." *Blum v. Stenson*, 465 U.S. 886, 897 (1976).

### III. DISCUSSION

After considering the parties' briefing and the history of this case, the Court finds that there are special circumstances here that would make an award of fees unjust. As such, it will deny HRDC's request for fees and will additionally order each party to bear its own costs. The Court makes this finding for several reasons.

#### A. The Timeliness of HRDC's Fee Request

Rule 54(d)(2) of the Federal Rules of Civil Procedure provides that, unless a statute or court order provides otherwise, a motion for attorney's fees must be filed "no later than 14 days after the entry of judgment." Local Rule 54.1 preserves this fourteen-day deadline but also provides that "[i]n the event a post-trial motion is filed, this 14-day period shall not commence until entry of the order granting or denying the post-trial motion." Moreover, "[a] failure to present a timely petition for an award of attorney's fees may be considered by the Court to be a waiver of any claim for attorney's fees." *Id.*

The parties, in both their briefing on the motion to stay as well as the motion presently before the Court, have vigorously disputed whether HRDC's motion, which was filed almost fifty days following the April 25 Judgment, is timely under these rules.[3] Technically speaking, HRDC is likely correct that the wording of the Local Rule provides that the 14-day window does not begin to run until the Court disposes of any post-trial motion. Nevertheless, the Court finds that the County also has a very good point about HRDC's diligence, or lack thereof, in filing a request for such fees. In short, the Court finds that HRDC's post-trial motion should not be allowed to extend a deadline that had otherwise long expired.

To understand why, the Court need only describe the timeline of events. The Court's bench trial Opinion and the resulting Judgment were issued on April 25, 2019. Under usual circumstances, HRDC would have needed to file its motion for attorney's fees by May 9. It didn't. In fact, HRDC did not file *anything* on the docket in this case until a full two weeks after this May 9th deadline, in which it first sought to "amend" the judgment by correcting a scrivener's error.[4] That means that one of two things happened. Either HRDC did not discover this "error" that needed correcting until *after* May 9th—

---

[3] For instance, HRDC argues that the text of Local Rule 54.1 provides that the fourteen-day window did not run until the Court ruled on its post-trial motion to correct the division number. The County argues that HRDC's clear tactical decision to wait until after the original fourteen-day deadline elapsed should not be rewarded and that, technically speaking, the Local Rule's extension for post-trial motions might not be implicated because the Court found HRDC's motion to alter judgment moot, rather than granting or denying it.

[4] While the Local Rules do not speak about which post-trial motions would have the effect of tolling the fourteen-day deadline, it is abundantly clear that the spirit of this extension is reserved for those post-trial motions that go to the substance of the order or judgment being modified, and not to motions which merely correct a single typographical error (that have no effect on the Court's underlying analysis or judgment).

which indicates a lack of diligence in moving for attorney's fees initially. Or, it discovered this "error" *before* May 9th and consciously decided not to comply with the usual 14-day deadlines in Rule 54 and Local Rule 54.1 because it wanted to wait an additional two weeks to file a motion that would needlessly extend its deadline to file its fee petition. The Court finds that this too demonstrates HRDC's lack of diligence in seeking fees. After all, Rule 54 "does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees." Fed. R. Civ. P. 54 advisory committee's note to 1993 amendment. In short, there was nothing about this particular motion that justified HRDC's delay in filing its fee request. As a result, the Court finds that HRDC's actions evince a clear lack of diligence in seeking fees.[5]

### B. Prevailing Party Status

Next, HRDC argues that "[t]here can be no dispute that Plaintiff is a prevailing party entitled to fees and costs." (Doc. 118, p. 3). Despite its confidence on this matter, the County vigorously disputes this point and contends that HRDC's technical success on one narrow swath of the rejected mailings it challenged does not render it a prevailing party. HRDC responds that "Defendant's argument downplays the extent of Plaintiff's success in this case." (Doc. 123, p. 3). The Court finds that it is *HRDC* that has greatly exaggerated its success in this case.

---

[5] Moreover, the time records submitted in this case provide further proof that a diligent party would have filed for fees long before HRDC did so in this case. For, it is clear that HRDC's attorneys, both inside and outside counsel, were having discussions during this period of time about post-trial matters. Yet, at no point during these discussions did they apparently feel the need to coordinate and file HRDC's motion for fees. *See, e.g.*, Doc. 117-2, p. 7. In fact, even after the Court resolved the post-trial motion, HRDC waited an additional eight days—not to file its motion for fees—but to petition the Court to sanction a further delay by staying consideration of this issue.

It must be remembered that HRDC's initial suit brought First and Fourteenth Amendment challenges against the County for rejection of at least 110 different HRDC mailings. HRDC lost on the main focus of this lawsuit, the First Amendment claim, as this Court held that under the test announced in *Turner v. Safley*, 482 U.S. 78 (1987), the postcard-only policy was rationally related to the legitimate penological objectives of the Jail. As to the Fourteenth Amendment claim, HRDC argued that due process required that it be given a rejection notice for each piece of rejected mail and that it be provided the opportunity to challenge each rejection of each individual mailing (all 110 of them) to (at least) a second official, who could decide whether the Jail's "censorship" was acceptable. In rejecting this argument, this Court joined the growing consensus of courts that have routinely and repeatedly rejected HRDC's arguments as unsupported by extant caselaw. *See, e.g., Prison Legal News v. Livingston*, 683 F.3d 201, 223 (5th Cir. 2012) ("TDCJ must be permitted to pass rules of general application, even ones that limit prisoner rights, without subjecting such rules to repetitive challenges every time they are applied."); *Prison Legal News v. Sec'y, Fla. Dep't of Corr.*, 890 F.3d 954, 976 n.20 (11th Cir. 2018) ("Due process does not demand that much . . . We also reject PLN's and the amici's argument that it is entitled to more due process protections because of the content of its magazine.").

Nevertheless, in applying the relevant law to the unique facts of this case (*i.e.*, to a case involving mailings sent to non-subscribers (mass mailings) that were rejected pursuant to a content-neutral policy of general applicability), the Court did determine that HRDC was entitled to some due process protections (notice of the reason for the rejections) and determined that, for the first batch of mailings HRDC sent, the County had

7

not provided HRDC with sufficient process. Thus, out of the large batch of mailings that HRDC sent to the Baxter County Jail over the course of several months, only the initial mailings were constitutionally problematic. Out of these mailings, the Court found only four technical violations. Moreover, although HRDC claimed that it was damaged by the County's failure to provide the reason why these four mailings had been rejected, the Court found that there was no proof in the record that any of the harms identified by HRDC were specifically tied to this technical violation. The Court additionally held that HRDC sought damages for other harms, such as frustration of its mission, that were (again) wholly unsupported by relevant law. Thus, it determined that an award of $1 in nominal damages was appropriate for each of these four violations. In light of its earlier ruling, the Court also declared that the County must provide a reason when it rejects mail.

In the wake of this history,[6] the Court finds it hard to fathom why HRDC believes that it achieved great success in this case. Indeed, the only aspect of this case on which it won was on an argument that it never made.[7] Perhaps this explains why HRDC wanted to stay a decision on fees until after it appealed the many issues—in fact, the overwhelming majority of the issues in this case—on which it lost. Nevertheless, the Court

---

[6] The Court's recitation of HRDC's "success" above also omits the fact that HRDC lost on several other matters in this case, including its request for a preliminary injunction and on the issue of qualified immunity.

[7] HRDC also argues that the declaratory judgment issued in this case successfully changed the status quo and altered the legal relationship between the parties. This is incorrect. As HRDC's own filings and evidence indicate, apart from the initial batch of mailings, it has always received notice from the County why its mailings were being rejected. In fact, the mail inspection video that HRDC video-recorded at the Baxter County Jail on August 22, 2018, shows that Baxter County has even invested in a stamp that has been custom designed to mark those items of mail that are being rejected pursuant to the postcard-only policy. Thus, the declaratory judgment did not alter the status quo since the County had long ago begun marking rejected mail with the reason for its rejection.

is required by case law to consider whether HRDC's technical success renders it a prevailing party within the meaning of § 1988. Fortunately, the Supreme Court has clarified that "a plaintiff who wins nominal damages is a prevailing party under § 1988." *Farrar v. Hobby*, 506 U.S. 103, 112 (1992). This is so because a nominal damages award alters the legal relationship between the parties, the hallmark indicator[8] of whether one is a prevailing party. As the Supreme Court noted, "[a] judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Id.* at 113.

But, just because HRDC may be a technically "prevailing" party on this one narrow issue does not necessarily mean that it is entitled to fees because the "technical" nature of a nominal damages award "does bear on the propriety of fees awarded under § 1988." *Id.* at 114. "Indeed, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Id.* (citations and internal quotation marks omitted). Thus, after considering the amount and nature of damages awarded, "the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness . . . or multiplying the number of hours reasonably expended by a reasonable hourly rate." *Id.* at 115 (cleaned up). In fact, "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief . . . the only reasonable fee is usually no fee at all." *Id.*

---

[8] "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111-12.

9

Such is the case here. HRDC prevailed on a very miniscule portion of the issues involved in this case. Moreover, it could not demonstrate through any evidence that it was injured as a result of the four technical due process violations. Finally, the declaratory judgment did not have the transformative effect that HRDC alleges, since the evidence shows that only the initial mailings sent to the Jail back in 2016 lacked an indication as to why they were rejected. As a result, and considering the Supreme Court's holding in *Farrar*, this Court concludes that the most appropriate fee in this case is simply no fee at all. While the Court recognizes that the disparity between what HRDC requested and what it received pales in comparison to the disparity of the recovery in *Farrar*, in both cases, the nature of the victory achieved by the plaintiff would mean that an award of fees would "[fail] to heed [the Supreme Court's] admonition that fee awards under § 1988 were never intended to produce windfalls to attorneys." *Id.* (citations and internal quotation marks omitted).[9]

---

[9] Some courts have also utilized the factors identified in Justice O'Connor's concurring opinion—the extent of the relief won, the significance of the legal issue on which plaintiff prevailed, and whether the victory accomplished some public goal—when deciding whether a plaintiff who wins nominal damages is entitled to a fee award. These factors also weigh against a fee award in this case. First, the extent of relief won is very minimal. Second, HRDC prevailed on a technical violation as to only the initial mailings, meaning that the County quickly corrected its behavior and conformed to the requirements of the Fourteenth Amendment by providing HRDC with an indication as to why subsequent mailings were denied. Given these facts and the fact that the chief focus of HRDC had been on the First Amendment claim during the entire course of litigation (as reflected in its decision not to appeal the adverse grant of summary judgment on the bulk of its due process claims), the Court finds that this was a minor issue in this case. Finally, given the County's quick course-correction, it cannot be said that the resulting nominal damage award or declaration that the County should do what it had been doing for the past several months (providing a reason when it rejects mail) accomplished a broader public goal. Thus, even under this test, the Court would find that HRDC is not entitled to fees.

## C. Nature of the Fees Sought in Relation to the Entity

The extent of the windfall that an award of fees would bestow on HRDC here is made greater because of the unique nature of this party and its counsel. HRDC was represented in this case by six attorneys: three work directly for HRDC; one was retained solely as local counsel in order to comply with the requirements of Local Rule 83.5(d); one works for a law firm in Seattle and, by this Court's count, participated in approximately zero hearings and signed zero filings; and one was not even added until the eve of trial, after HRDC had already obtained all of the "success" it was to obtain in this case.

Awarding fees under such circumstances would not advance the policy principles behind § 1988 and would serve merely to give counsel a windfall. As the Supreme Court has made clear, "Section 1988 serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights." *Perdue v. Kenny A. ex. rel. Winn*, 559 U.S. 542, 559 (2010). An organization whose principal task is litigation[10] and who can afford to retain six attorneys, is not the kind of "persons without means" the statute has in mind. In addition, because it is often the case that "attorney's fees awarded under § 1988 are not paid by the individuals responsible for the constitutional or statutory violations . . . [but] are paid in effect by state and local taxpayers . . . money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services." *Id.* Indeed, it is quite ironic that an organization that espouses a mission to better public services such as prisons, and that has repeatedly commented in this case upon the County's annual operating budget of about a million dollars, would find it

---

[10] Paul Wright, the Executive Director of HRDC, testified that HRDC's work is split roughly 60% litigation, 40% publishing/advocacy.

appropriate to request a fee award that exceeds 10%[11] of that annual budget and which would clearly deprive the County of money that could be devoted to the County's provision of public services, including to the prisoners who HRDC claims to want to benefit.

That it has requested such an award in light of its $4 recovery makes matters worse. In effect, where, as here, any fee award would not primarily compensate paid outside counsel but would rather go back into the pockets of HRDC, such an award would essentially be an indirect damages award, compensating HRDC thousands of times over for its $4 nominal judgment, despite its failure to demonstrate that it suffered any actual injuries by the technical due process violations. Moreover, by any definition, HRDC's "victory" in this case was Pyrrhic.[12] *Farrar*, 506 U.S. at 120 (O'Connor, J., concurring) ("Just as a Pyrrhic victor would be denied costs under Rule 54(d), so too should it be denied fees under § 1988."). And while the Court recognizes that there is no bar on in-house counsel receiving attorney fee awards under § 1988, the circumstances of this case would make an award of fees here unjust.

While none of these reasons alone might justify the denial of fees in this case, the Court finds that all of these factors together compel the conclusion that there are special

---

[11] Although HRDC only requests $145,235 in the instant motion, that number represents only *half* of the fees that its six attorneys have allegedly earned in this case and would have requested had it prevailed on the First Amendment claim as well.

[12] In its proposed conclusions of law (submitted to the Court via email), HRDC submitted an estimate of the total damages it sought as to both the First and Fourteenth Amendment claims. All told, it sought $45,955.04 in this litigation. Yet, by the Court's count, HRDC expended some $302,068.82 (in fees and costs) in pursuing this litigation, winning only a $4 nominal damage award. While in any other case such a disproportionate recovery might support the award of fees in light of the policy principles behind § 1988 (*i.e.*, to incentivize the bar to take cases on behalf of individuals who lack the resources to bring their own suits), in this case, such a disproportionate figure indicates the injustice that would occur were the Court to approve a fee request.

circumstances here which would render an award of attorney's fees unjust. For the same reasons, the Court will deny HRDC's request for costs and expenses and order that each party should bear its own costs. *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 377 ("Rule 54(d)(1) codifies a venerable presumption that prevailing parties are entitled to costs. Notwithstanding this presumption, the word 'should' makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court."); *Richmond v. Southwire Co.*, 980 F.2d 518, 521 (8th Cir. 1992) ("An award of costs may be reduced or denied because the prevailing party obtained only a nominal victory, or because the taxable costs of the litigation were disproportionate to the result achieved.").

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that HRDC's Motion for Attorneys' Fees, Costs, and Expenses (Doc. 117) is **DENIED**. Each party shall bear its own costs in this matter.

**IT IS SO ORDERED ON THIS** 15th **day of August, 2019.**

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE